UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

KEITH GRIFFIN,

        Plaintiff,                           CASE NO.: 4:12cv51-RH/WCS

v.

CITY OF TALLAHASSEE, et al.,

        Defendants.

_____

**INDIVIDUAL DEFENDANTS' MEMORANDUM
OF LAW IN SUPPORT OF DEFENDANTS'
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Come now the individual Defendants, Lawana Washington (Investigator Washington), Forensic Specialist Caroline Carpentieri (Carpentieri) and Forensic Specialist Rebecca Blizzard (Blizzard), by and through undersigned counsel, and in accordance with N.D. Fla. Loc. Rule 7.1(A), submit their memorandum of law in support of their motion for summary judgment as to plaintiff's amended complaint (hereinafter complaint).

**I.      INTRODUCTION**

Counts I through III of plaintiff's complaint are brought pursuant to 42 U.S.C. § 1983 and allege that on and after September 4, 2010, Investigator Washington, Caroline Carpentieri and Rebecca Blizzard, acting within the scope and authority of their employment, violated plaintiff's constitutional right to be

free of false imprisonment, to be free of malicious prosecution and to have all exculpatory evidence disclosed.  Count VII is a state law false imprisonment claim alleging that the individual defendants' actions were extreme and outrageous and that they are personally liable therefor.

## II.   SUMMARY JUDGMENT STANDARD

In all probability, this Court is well versed in the standard that applies to Motions for Summary Judgment under Rule 56, Fed.R.Civ.P. Essentially, to defeat this motion, plaintiff must come forward with sufficient evidence of every element that he must prove to prevail at trial.[1] This Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.[2]  "A motion for judgment as a matter of law will be denied only if 'reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions.'"[3]  In the present case, it is clear that if trial were held tomorrow, plaintiff could not meet the affirmative evidentiary requirements needed to prove his claims against the individual defendants.

---

[1]     Rollins v. Tech South, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987).
[2]     Combs v. Plantation Patterns, 106 F.3d 1519, 1526 (11th Cir. 1997).
[3]     Mendoza v. Borden, Inc., 195 F.3d 1238, 1244 (11th Cir. 1999), quoting Walker v. Nations Bank of Florida, N.A., 53 F.3d 1548, 1555 (11th Cir. 1995)).

## III.   STATEMENT OF FACTS

On September 4, 2010, Danita Johnson reported to the Tallahassee Police Department (TPD) that the New Salem Missionary Baptist Church (the Church) had been burglarized. A number of items of musical equipment were stolen and the Church was damaged.[4] TPD Officer Charles Perry responded to the scene as did TPD Forensic Specialist Carpentieri.[5]

At the Church, Carpentieri discovered numerous pieces of the Church's paperwork strewn about on and around the last pew in the Church.  The paperwork included approximately 127 documents, including checks and receipts. Carpentieri collected all of the paperwork to process for latent fingerprints at the Forensic Unit's Lab. The paperwork was processed with the chemical ninhydrin at the Forensic Unit Lab.  Latent fingerprints were developed on only three items: check number 1599, check number 1619 and on a manila envelope.[6]

Due to their porous nature, paper items (such as check # 1599) are processed for latent fingerprints with the chemical ninhydrin.  Any fingerprints developed are reviewed by a Forensic Specialist II and valued for fingerprint comparison. Although fingerprints were developed on three items, only one item is relevant here; check # 1599, which was valued by Forensic Specialist Annie Pressey (Pressey) and determined to be of sufficient quality to run through the Automated

---

[4]      Exhibit A and Exhibit M, ¶ 3.
[5]      Exhibit A and Exhibit J, ¶ 4.  All exhibits are attached to defendants' motion for summary judgment.
[6]      Exhibit J, ¶ 6.

Fingerprint Identification System (AFIS). AFIS is a database of all the recorded fingerprints of persons arrested in the state of Florida.[7] On the back of check # 1599 the letter "A" indicates a fingerprint of AFIS quality.[8]

For a print to be run through AFIS it must be photographed or scanned to an actual size of 1" by 1" with a minimum of 1000 dpi resolution. On September 13, 2010, the latent print developed on check # 1599, the only print from the burglary scene of AFIS quality, was scanned and sent electronically to TPD Forensic Specialist Blizzard, who uploaded the image to AFIS, which has software that attempts to match the latent print to a known person's fingerprint. AFIS generally returns about 30 known fingerprints that might be a match. A Forensic Specialist II compares each known fingerprint to the latent to determine whether there may be a match. Blizzard determined that the known print of plaintiff matched the latent found on check # 1599.[9]

Because Blizzard was in training, she had Pressey, a fully qualified latent fingerprint examiner, compare and determine whether plaintiff's print matched the latent print. Blizzard had no further involvement in the matter. Pressey determined that plaintiff's print matched the latent.[10]

---

[7]    Exhibit L, ¶ 4.
[8]    Exhibit O, check # 1599.
[9]    Exhibit L, ¶ 5 and Exhibit K, ¶¶ 3 and 4.
[10]   Exhibit L, ¶ 6 and  Exhibit K, ¶ 5.

On or about September 14, 2010, all of the items collected at the Church were packaged and custody was transferred by Carpentieri to TPD's Property and Evidence Unit where they were impounded. Carpentieri had no further involvement in the matter.[11] A Forensic Unit report was prepared and signed by Pressey as Examiner and by Unit Supervisor Joanne Maltese as Verifier and forwarded to TPD's Burglary Unit.[12]

When Carpentieri was chemically processing the 127 pieces of paper collected from the Church, she visually inspected all of the pieces of paper for the development of fingerprints.  Other than the description of the papers with developed fingerprints, the content was irrelevant to the development process.  At this point in time, Carpentieri did not know that plaintiff's fingerprint or name were on check # 1599.  Prior to impoundment, the fingerprint was not identified.[13] At this point in time, it was unknown to Carpentieri, or anyone else at the Forensic Unit, that it was plaintiff's fingerprint on the check.[14]

Under the facts of this case it would not have been protocol, policy or standard practice for any Forensic Specialist, whether employed by TPD or any other law enforcement agencies, to do anything but process, develop, and attempt

---

[11]     Exhibit J, ¶ 7.
[12]     Exhibit L, ¶ 8 and Exhibit B.
[13]     Exhibit J, ¶ 8.
[14]     Exhibit J, ¶ 8, Exhibit K, ¶ 6 and Exhibit L, ¶ 9.

to identify the latent fingerprints found.  Forensic Specialists are not investigators

and it was not their job to "investigate" this burglary, as suggested by plaintiff.[15]

In September 2010, Investigator Washington was assigned to TPD property

crimes unit. A few days after the burglary was reported, Investigator Washington

was assigned the case by her supervisor, Sgt. David Sims.  On or after September

17, 2010, Investigator Washington received the TPD Forensics report identifying

plaintiff's fingerprints as being on check # 1599 found at the burglary scene.[16]

It was Investigator Washington's custom and practice as a property crimes

investigator to attempt to locate a suspect's phone number and contact the suspect

to speak with him/her about the matter under investigation.  This was Investigator

Washington's best and primary tool in solving burglaries.  The records she

customarily researched included City of Tallahassee utility records, TPD's Infotrak

Investigative Query (IIQ), and the Criminal Justice Information Services database

(CJIS).  Investigator Washington's research resulted in three numbers for plaintiff.

She contacted each of the three numbers, but each one was a bad number—two had

been disconnected and one appeared to be a fax number. Investigator Washington

was not able to contact plaintiff by telephone. She did not go to any of the street

---

[15]   Exhibit L, ¶ 10.
[16]   Exhibit M, ¶ 3.

addresses related to his name, as it was not her custom or practice to do so, due to the high case load she carried.[17]

On or about October 18, 2010, Investigator Washington contacted Ms. Johnson and obtained additional information about the property taken from and the damage to the Church.  Investigator Washington also asked her if she or anyone else at the Church knew Keith Griffin.  Mr. Johnson reported back to Investigator Washington that neither she nor anyone else at the Church knew Keith Griffin.[18]

Based on the facts she had at the time, Investigator Washington prepared a probable cause affidavit to obtain a warrant for plaintiff's arrest.[19]  The probable cause affidavit contained all of the facts stated above of which Investigator Washington had knowledge.  On or about October 20, 2010, the probable cause affidavit was reviewed and approved by Investigator Washington's supervisor, Sgt. David Sims, by Assistant State Attorney Eddie Evans (ASA Evans) and by Judge Flury, the issuing magistrate.  Plaintiff was arrested on or about October 26, 2010.[20] Subsequent to plaintiff's arrest, Investigator Washington prepared an Incident report detailing her actions.[21]

From September 4, 2010 until November 8, 2010, check # 1599 had been stored in TPD's Property and Evidence Unit. On November 8, 2010, TPD's Court

---

[17]     Exhibit M, ¶ 4.
[18]     Exhibit M, ¶ 5.
[19]     Exhibit D.
[20]     Exhibit M, ¶ 6.
[21]     Exhibit M, ¶ 6 and Exhibit E.

Liaison retrieved the check (and miscellaneous other documents not relevant herein) and provided Assistant State Attorney Owen McCaul (ASA McCaul) with a copy.  Until November 8, 2010, neither Investigator Washington nor the State Attorney had ever seen check # 1599.

On November 8, 2010, Investigator Washington received an email from ASA McCaul advising that check # 1599 had been made out to plaintiff, which was a likely innocent explanation for why his fingerprint was on the check.[22]  At that time, Investigator Washington again contacted Ms. Johnson with this new information and upon further investigation, Ms. Johnson told her that plaintiff had been employed with the Church in the 1980's as a musician and was very apologetic.  Investigator Washington recommended that all charges be dropped against plaintiff and on November 16, 2010 a "No Information" was filed dismissing all charges against plaintiff.[23]

## IV.   ARUGMENTS AND AUTHORTIES

## A.   PLAINTIFF HAS NO CLAIM FOR FALSE IMPRISONMENT

There can be no cause of action for false arrest and false imprisonment because plaintiff was arrested on a facially valid arrest warrant.  In Florida, an arrest and imprisonment "under process regular and in legal form issued by lawful

---

[22]      Exhibit G and Exhibit M, ¶ 7.
[23]      Exhibits F, H and Exhibit M, ¶ 7.

authority" is not false.[24] Each individual defendant is entitled to judgment as a matter of law on plaintiff's § 1983 and state law claims of false imprisonment (Counts I and VII).

**B.    THE DOCTRINE OF QUALIFIED IMMUNITY SHIELDS INVESTIGATOR WASHINGTON, FORENSIC SPECIALIST CARPENTIERI AND FORENSIC SPECIALIST BLIZZARD FROM INDIVIDUAL LIABILITY**

Investigator Washington, Forensic Specialist Carpentieri and Forensic Specialist Blizzard are being sued in their individual capacities under § 1983, and are therefore entitled to qualified immunity.[25]  This immunity is not only from liability but also from suit.[26]  Qualified immunity protects government officials performing discretionary functions not only from civil liability, but also from discovery and trial, if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.[27]  TPD employees accused of a Fourth Amendment violation are is entitled to qualified immunity if their actions were objectively reasonable.[28]

Plaintiff's allegations and the affidavits presented by the individual defendants conclusively show that they were acting within the scope of their

---

[24]      Thornton v. City of Tampa, 2010 WL 427737 (M.D. Fla. 2010).
[25]      Riebsame v. Prince, 267 F.Supp.2d 1225, 1231 (M.D. Fla. 2003).
[26]      See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); See also GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1366 (11th Cir. 1998).
[27]      Post v. City of Fort Lauderdale, 7 F.3d 1552, 1556 (11th Cir. 1993); Lassiter v. Alabama A & M Univ. Bd. of Trustees, 28 F.3d 1146, 1149 (11th Cir. 1994).
[28]      See Graham v. Connor, 490 U.S. 386 (1989); Nolin v. Isabell, 207 F.3d 1253 (11th Cir. 2000); Priester v. City of Riviera Beach, 208 F.3d 919 (11th Cir. 2000).

discretionary authority at all relevant times herein; thus they are entitled to qualified immunity, and the burden shifts to plaintiff to show that qualified immunity is not appropriate.[29]  To overcome qualified immunity, plaintiff must demonstrate that each individual defendant's conduct violated "clearly established (federal) statutory or constitutional rights of which a reasonable person would have known."[30]

This Court has the discretion whether to follow the two-step sequence for resolving government officials' qualified immunity claims established in <u>Saucier v. Katz</u>,[31] or to decide which of the two prongs should be addressed first in light of circumstances in the particular case at hand.[32]  In the instant case the <u>Saucier</u> analysis seems appropriate.  Thus the Court must decide whether the facts alleged, assuming they are true, demonstrate that each individual defendant violated plaintiff's constitutional right. Only if this first query is answered in the affirmative does this Court proceed to the second query, which is to determine whether the right violated was clearly established. Based on the record and the undisputed facts, it is abundantly clear that neither plaintiff can make a credible showing that any individual defendant violated plaintiff's constitutional rights.

---

[29]   <u>Vineyard v. Wilson</u>, 311 F.3d 1340, 1346 (11th Cir. 2002).
[30]   <u>GJR</u>, 132 F.3d at 1366; and <u>Storck v. City of Coral Springs</u>, 354 F.3d 1307, 1314 (11th Cir. 2003).
[31]   533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).
[32]   <u>Case v. Eslinger</u>, 555 F.3d 1317, 1325-26 (11th Cir. 2009).

1.   **FORENSIC SPECIALIST CARPENTIERI IS ENTITLED TO QUALIFIED IMMUNITY**

At all times pertinent herein, Carpentieri was a "forensic technician" acting within the course and scope of her employment. She was not a trained police officer, much less a criminal investigator. The undisputed record evidence shows that all Carpentieri did was to collect evidence from the scene of the burglary, process some of the paper items collected with chemicals for evidence of latent fingerprints and cause the evidence she collected to be impounded in TPD's Property and Evidence Unit.  It is further undisputed that at no time herein did Carpentieri ever know that plaintiff's name was on the check (check # 1599) on which fingerprints were eventually found. Carpentieri also adopts the arguments set out by Investigator Washington in Parts IV C-F, below.

2.   **FORENSIC SPECIAILST BLIZZARD IS ENTITLED TO QUALIFIED IMMUNITY**

At all times pertinent herein, Blizzard was a "forensic technician" acting within the course and scope of her employment. She was not a trained police officer, much less a criminal investigator. The undisputed record evidence shows that all Blizzard did was run the prints found on check # 1599 through AFIS to try and obtain a match and once a potential match was made, hand the fingerprint

comparisons off to another TPD latent fingerprint examiner.  Carpentieri also

adopts the arguments set out by Investigator Washington in Parts IV C-F, below.

## C. PLAINTIFF HAS FAILED TO PROVE A CONTITUTIONAL VIOLATION FOR HIS CLAIM OF FALSE IMPRISONMENT

In Florida, the tort of false imprisonment is the unlawful detention of the

plaintiff without color of law that deprives him of his liberty.[33] The detention must

be unreasonable and not warranted by the circumstances.[34] The existence of

probable cause at the time of arrest constitutes an absolute bar to a § 1983 action

for false arrest.[35]  It is well settled that probable cause is defined in terms of facts

and circumstances sufficient to warrant a prudent man in believing that the suspect

had committed or was committing an offense.[36]  For probable cause to exist, an

arrest must be objectively reasonable under the totality of the circumstances.[37]

Moreover, a police officer is entitled to qualified immunity if there was even

arguable probable cause for the arrest.[38] Arguable probable cause exists when an

officer reasonably could have believed that probable cause existed, in light of the

information the officer possessed.[39] This standard is met when the facts and

circumstances within the officer's knowledge, of which he or she has reasonably

---

[33]   Spears v. Albertson's, Inc. 848 S. 2d 1176 (Fla. 1st DCA 2003).
[34]   Id.
[35]   Marx v. Gumbinner, 905 F.2d 1503, 1505-06 (11th Cir.1990).
[36]   Storck v. City of Coral Springs, 354 F.3d 1307, 1316 (11th Cir. 2003).
[37]   Id.
[38]   Id.
[39]   Id.

trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed an offense.[40]

Here, the facts upon which Investigator Washington relied in determining that probable cause existed to obtain a warrant for plaintiff's arrest are set forth in her probable cause affidavit (Exhibit D) and are not in dispute.  Further, there is no dispute that Investigator Washington included everything of which she had knowledge about the incident in her probable cause affidavit. Thus, whether a constitutional violation has occurred turns on the contents of Investigator Washington's probable cause affidavit that was presented in support of the arrest warrant.[41] "This is so because generally, if facts supporting an arrest are placed before an independent intermediary such as a magistrate or a grand jury, the intermediary's decision breaks the causation for false arrest, insulating the initiating party."[42] Whether Investigator Washington's probable cause affidavit demonstrates probable cause is a question of law.[43]

Here plaintiff has to present admissible evidence to demonstrate that Investigator Washington's probable cause affidavit was so lacking in probable cause to make belief in it unreasonable.[44] Plaintiff is obligated to present evidence showing that Investigator Washington's probable cause affidavit was based on

---

[40]    Id.
[41]    Drudge v. City of Kissimmee, 581 F.Supp.2d 1176, 1186 (M.D. Fla.2008). (citations omitted).
[42]    Id. at 1186-87(citations and quotations omitted).
[43]    Id. at 1187 n. 13.
[44]    Id. at 1187(citations and quotations omitted).

13

misstatements or omissions made intentionally, or with reckless disregard for the truth.[45]  Proof of a negligent misrepresentation or omissions is legally insufficient.[46] Plaintiff has failed to meet his burden; moreover, the undisputed evidence clearly demonstrates that Investigator Washington's probable cause affidavit showed not only arguable probable cause, but also probable cause.

The gravamen of plaintiff's claim against Investigator Washington is that she violated plaintiff's constitutional right by intentionally omitting from her probable cause affidavit that plaintiff was the payee of check # 1599, the check on which his fingerprint was found.[47]  To establish an omission as grounds for liability, plaintiff must submit admissible evidence showing that prior to plaintiff's arrest Investigator Washington had seen check # 1599 and knew that its existence would negate probable cause and that she intentionally failed to inform Judge Flury of the existence of check # 1599 so that the arrest warrant would be issued.[48] This plaintiff has failed to do for the simple reason that the undisputed evidence demonstrates that prior to plaintiff's arrest on October 26, 2010, Investigator Washington had never seen check # 1599, had absolutely no knowledge that plaintiff was the payee of check # 1599 and did not know that the check could negate probable cause.  It is undisputed that Investigator Washington did not see

---

[45]    Miller v. Eslinger, 2011 WL 4481260 *5, (M.D. Fla. 2011).
[46]    Kelly v. Curtis, 21 F.3d 1544, 1546 (11th Cir.1994).
[47]    Plaintiff's complaint at ¶¶ 27-31.
[48]    Drudge at 1187 (quotations and citations omitted)

check # 1599 and learn that plaintiff was the payee of the check until on or after

November 8, 2010, when ASA McCaul requested that a copy of the check be

provided to him from TPD's Property and Evidence Unit.

Investigator Washington included in the probable cause affidavit all the

information her investigation had gathered about the burglary that had taken place

at the Church.  The affidavit included that a TPD forensic specialist had collected

and processed from the burglary scene miscellaneous ransacked papers for

fingerprints; that fingerprints of value were submitted by another TPD forensic

specialist to AFIS for fingerprint comparison; that AFIS returned plaintiff's

fingerprints as a match for the fingerprints on what was identified merely as check

# 1599, which was one of the ransacked papers that was collected at the burglary

scene; that plaintiff was not known to anyone at the Church that was burglarized

and thus there was no legitimate reason for his fingerprints to have been on any of

the ransacked papers.  All of the information Investigator Washington gathered had

come from highly trustworthy sources and she presented all of that information to

ASA Evans and Judge Flury, both of whom approved probable cause. Specifically,

Investigator Washington included the information from the TPD forensic report

(Exhibit B) that specifically identified check # 1599 as the document on which

plaintiff's fingerprint was found.  Neither ASA Evans nor Judge Flury considered

it crucial to the issue of probable cause to actually view the check, or they would

have asked to do so. A prudent officer with this information could have reasonably believed that probable cause existed for a warrant to be issued for plaintiff's arrest for the crime of burglary.  Moreover, the very fact that Judge Flury approved the probable cause affidavit and issued the arrest warrant indicates that Investigator Washington acted in an objectively reasonable manner.[49] It is a sound presumption that Judge Flury was more qualified than Investigator Washington to make a probable cause determination.[50]  If Judge Flury mistakenly, but within the range of professional competence of a magistrate, issued the warrant for plaintiff's arrest, then Investigator Washington cannot be held liable therefor.[51]

Plaintiff may argue that Investigator Washington could have conducted a more perfect investigation in that she should have reviewed the check before seeking the arrest warrant.  It is well settled that a police officer is not required by the Constitution to independently investigate every claim of innocence nor perform an error-free investigation.[52] Once a police officer has discovered sufficient facts to establish probable cause, she has no constitutional obligation to conduct any further investigation in the hopes of uncovering potentially exculpatory evidence.[53]

Here, Investigator Washington had plaintiff's fingerprints on papers found at the scene of the crime; she tried to contact plaintiff, to no avail. She contacted Ms.

---

[49]     Messerschmidt v. Millender, 132 S.Ct. 1235 (2012).
[50]     Id. at 1424.
[51]     Id.
[52]     Baker v. McCollan , 443 U.S. 137 (1979).
[53]     Schertz v. Waupaca County, 875 F.2d 578 (7th Cir. 1989).

Johnson, the Church's spokesperson, to determine whether plaintiff was known by anyone at the Church or whether he had any legitimate reason to have been at the Church.  Ms. Johnson told Investigator Washington that no one at the Church knew of plaintiff, and thus he had no legitimate reason to have been at the Church. As a matter of law, Investigator Washington had probable cause to seek an arrest warrant for plaintiff's arrest.  She provided ALL of the information of which she was aware to both ASA Evans and to Judge Flury.   She withheld nothing.

While it is clear that Investigator Washington had probable cause to obtain an arrest warrant for plaintiff's arrest, Investigator Washington also would show to the Court that she undoubtedly had **arguable** probable cause, which is all that is required for qualified immunity to be applicable to an arresting officer.[54]

In light of the investigative efforts made by Investigator Washington and the information she collected a reasonably competent officer could have believed that probable caused existed sufficient that a warrant should issue.  In this case, the investigation conducted and the information collected would at least arguably implicate plaintiff in the burglary committed at the Church. Under these circumstances, an officer of reasonable competence could have believed that the information collected provided probable cause to arrest plaintiff.

---

[54]      <u>Storck</u>, 354 F.3d at 1316.

Since the undisputed evidence proves that plaintiff's constitutional right was not violated, Investigator Washington is entitled to qualified immunity, as a matter of law, to his claim for false imprisonment.

## D.   PLAINTIFF HAS FAILED TO PROVE THAT THE CONSTITUTIONAL RIGHT HE CLAIMS WAS VIOLATED WAS CLEARLY ESTABLISHED

Not only has plaintiff failed to prove a violation of his constitutional rights, he has also failed to prove that such right was "clearly established."  Plaintiff has not pointed to law from the United States Supreme Court, the Florida Supreme Court, or a federal statute or federal constitutional provision which clearly established that it was unlawful for a police officer to believe that she had probable cause to seek an arrest warrant after being advised by a trustworthy forensic report that plaintiff's fingerprints were found at the scene of a burglary, and thereafter being advised by the entity that was burglarized that plaintiff was not known by anyone and thus there was no legitimate reason for his fingerprint to be found at the burglary scene. Further it also has not been clearly established that it was unlawful to obtain an arrest warrant without first exhausting every investigative possibility, such as going to TPD's Property and Evidence Section and viewing the check on which plaintiff's fingerprint was found.[55]

---

[55]     Storck, 354 F.3d at 1317-18; Lee, 284 F.3d at 1197.

**E.      PLAINTIFF HAS FAILED TO PROVE A CONSTITUTIONAL
VIOLATION FOR HIS CLAIM OF MALICOUS PROSECUTION**

Plaintiff must prove all the elements of his claim for malicious prosecution

to establish a constitutional violation.  To do so, he must prove each of the

following elements: (1) the commencement of a criminal judicial proceeding; (2)

its legal causation by the present defendant against the present plaintiff, who was

the defendant in the original proceeding; (3) its bona fide termination in favor of

the present plaintiff; (4) the absence of probable cause for commencing such

proceeding; (5) the presence of malice therein; and (6) damage conforming to legal

standards resulting to the plaintiff.

If any one of these elements is lacking, the result is fatal to the action. As to

all six (6) elements, plaintiff bears the burden of proof, the standard of which is a

preponderance of competent evidence.[56]  Additionally, since plaintiff's claim has

been brought under § 1983, he must prove a violation of his Fourth Amendment

right to be free from unreasonable seizure.[57]

Investigator Washington concedes that plaintiff has proven the first and third

elements of his cause of action.  Plaintiff, however has failed to submit any

admissible evidence to prove the second and fourth elements of the prima facie

---

[56]      Ware v. United States, 971 F.Supp. 1442, 1461(M.D. Fla. 1997), citing Alamo Rent-A-Car v. Mancusi, 632
So.2d 1352, 1355 (Fla.1994) and Phelan v. City of Coral Gables, 415 So.2d 1292, 1294 (Fla. 3d DCA 1982).
[57]      Alderman v. McDermott, 2004 WL 1109541 (M.D. Fla. 2004).

case of malicious prosecution.  The fifth and sixth elements relating to malice and

damages will not be discussed in this memorandum of law.

**1.      INVESTIGATOR WASHINGTON DID NOT CAUSE THE
         COMMENCEMENT OF PLAINTIFF'S PROSECUTION**

Causation is the second element of a prima facie case for malicious

prosecution.  Plaintiff has failed to prove that Investigator Washington caused the

commencement of plaintiff's criminal prosecution.  Where an intervening act

breaks the causation between the arresting officer[58] and the prosecution, the officer

is not liable for the prosecution.[59]

The Eleventh Circuit's decision in <u>Eubanks v. Gerwens</u>, is instructive on this

point.[60] In <u>Eubanks</u>, the plaintiff brought an action against police officers and a

police chief asserting, among other things, a malicious prosecution claim. In

granting summary judgment for the defendants, the Court held:

> The evidence in the record reveals that none of the
> defendants had anything to do with the decision of
> whether or not to prosecute Eubanks. Thus the
> defendants herein are not the proper targets of such a
> claim. In the within case, if the entire sequence of events,
> including those relevant to the arrest, is examined, it
> becomes clear that none of the defendants were
> responsible for the decision to prosecute, and that none of
> them improperly influenced the decision to prosecute.
> They did fully inform the State Attorney of all relevant

---

[58]      Although Investigator Washington was not the arresting officer, it is undisputed that the probable cause
warrant he prepared led to plaintiff's arrest and the commencement of the criminal proceedings against plaintiff.

[59]      <u>Barts v. Joyner</u>, 865 F.2d 1187, 1195-96 (11th Cir. 1989) (police were not liable for trial, conviction, and
incarceration because prosecutor broke chain of causation after allegedly false arrest).

[60]      40 F.3d 1157 (11th Cir. 1994)

information known to them, including that which
weighed for and against Eubanks' guilt.[61]

Plaintiff has presented no admissible evidence proving that: (1) prior to plaintiff's arrest (October 26, 2010) Investigator Washington had knowledge that plaintiff was the payee of check # 1599, and (2) that she willfully failed or refused to disclose the check (or any other evidence) to the State Attorney and/or the judicial officer. In fact, the evidence is undisputed that Investigator Washington did not learn that plaintiff was the payee of check # 1599 until on or after November 8, 2010 and that by October 26, 2010, she had disclosed all evidence of which she had knowledge to the State Attorney and the judicial officer, withholding nothing.

It is undisputed that that prior to plaintiff's arrest on October 26, 2010, Investigator Washington had submitted to ASA Evans and Judge Flury all relevant information then known to her, including that which weighed for and against the plaintiff's guilt.   Accordingly, plaintiff has failed to prove the requisite causation between the action of Investigator Washington and the issuance of the arrest warrant.[62]

---

[61]      Id. at 1160-61; Reed v. City of Chicago, 77 F.3d 1049, 1053 (7th Cir. 1996) (observing "the State's Attorney, not the police, prosecutes a criminal action.").
[62]      Post, supra; Barts, supra.

## 2.   PLAINTIFF HAS FAILED TO PROVE THE ABSENCE OF PROBABLE CAUSE

Plaintiff has also failed to prove the fourth element of his cause of action: an absence of probable cause for the commencement of the prosecution—in that regard plaintiff must prove an absence of probable cause during all stages of the prosecution, from the issuance of the arrest warrant through the date the case was dismissed by the Officer of the State Attorney's "No Information".[63]  In fact, the burden is even greater in that plaintiff must actually prove the lack of **arguable** probable cause.[64]  To defeat Investigator Washington's qualified immunity defense, plaintiff must show that under no reasonable interpretation of his version of the facts could a reasonable police office have concluded that probable cause existed for issuance of the arrest warrant for plaintiff and his subsequent arrest.[65]

Not only has plaintiff failed to prove the lack of either probable cause or arguable probable cause, the undisputed evidence proves that Investigator Washington not only had arguable probable cause, but probable cause.

## F.   FAILURE TO DISCLOSE EXCULPATORY EVIDENCE

Investigator Washington hereby adopts and incorporates herein in its entirety and specifically makes a part hereof the arguments and authorities set out above in Parts III A through C. Investigator Washington assumes for purposes of the motion

---

[63]     Ware, 971 F. Supp. at 1462, (citing Burns v. GCC Beverages, Inc., 502 So.2d 1217, 1219 (Fla.1986)).
[64]     Montoute v. Carr, 114 F.3d 181, 184 (11th Cir.1997).
[65]     Post, supra, 7 F.3d at 1557; Wilson v. Attaway, 757 F.2d 1227, 1235 (11th Cir.1985).

for summary judgment that a § 1983 cause of action for "failure to disclose exculpatory evidence" actually exists, although no research so indicates.

Plaintiff has not submitted any evidence showing that Investigator Washington failed to disclose any evidence to either the Assistant State Attorney or Judge Flury; moreover, the undisputed evidence shows that Investigator Washington disclosed all evidence of which she had knowledge to both the Assistant State Attorney and Judge Flury.  Investigator Washington is entitled to summary judgment on plaintiff's claim for failure to disclose exculpatory evidence (Count III).

## V.    CONCLUSION

WHEREFORE, Investigator Washington, Carpentieri and Blizzard respectfully request this Court grant summary judgment in their favor and against plaintiff as to Counts I through III and VII of plaintiff's complaint.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 29th day of June 2012 a true and correct

copy of the foregoing has been furnished by electronic mail via CM/ECF to

James V. Cook, Esq.

> _/s Billy J. Hendrix_
> BILLY J. HENDRIX
> Assistant City Attorney
> FBN:  849529
> City Attorney's Office
> 300 South Adams Street, Box A-5
> Tallahassee, FL 32301
> (850) 891-8554
> Fax: (850) 891-8973
> Billy.Hendrix@talgov.com
> ATTORNEYS FOR THE CITY OF
> TALLAHASSEE, LAWANA
> WASHINGTON, CAROLINE
> CAPENTIERI AND REBECCA
> BLIZZARD